AO 106 (Rev. 04/10) Application for a Search Warrant       AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 6/9/2025

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. M-25-371-SM
A blue Samsung Cell Phone with Photo of Male and Female on the )
Lock Screen, Currently Located at the Oklahoma Bureau of Narcotics, )
at 419 NE 38th Terrace, Oklahoma City, Oklahoma )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1111, 1151 & 1153 | Murder in Indian County |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Nicholas Miller, FBI TFO, Bureau of Indian Affairs
Printed name and title

Sworn to before me and signed in my presence.

Date: June 9, 2025

_____
Judge's signature

City and state: Oklahoma City, Oklahoma        Suzanne Mitchell, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

1. I, Nicholas Miller, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

2. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search: a blue Samsung cellphone, with photo of male and female believed to be Heather Harjo and Cliffton Hawk on the lock screen, located at the Oklahoma Bureau of Narcotics and Dangerous Drugs, at 419 NE 38th Terrace, Oklahoma City, Oklahoma (hereinafter, "the **Subject Property**").

### PURPOSE OF AFFIDAVIT

3. Based on the facts set forth in this Affidavit, there is probable cause to believe that a violation of 18 U.S.C. §§ 1111, 1151, and 1153: Murder in Indian Country has been committed by Heather Lynn Harjo (HARJO). There is also probable cause to search the item described in **Attachment A**—a blue Samsung cellphone, with photo of male and female believed to be Heather Harjo and Cliffton Hawk on the lock screen—for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in **Attachment B**.

4. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this Affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to conduct a search of and for the items described in **Attachments A** and **B** for evidence, contraband, and/or instrumentalities of the criminal conduct described herein. Additionally,

unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

## PROBABLE CAUSE

5. On April 28, 2025, the Ada Police Department received a call from L.W reporting a woman had been shot in the chest and was not breathing at 1340 Wolfe Lane, Ada, Oklahoma. This location is within the boundaries of the Chickasaw Nation and the Eastern District of Oklahoma.

6. When Ada Police Officers arrived, they located the deceased victim (S.M.) inside of the residence. S.M. is an enrolled member of the Choctaw Nation—a federally recognized tribe—and has some quantum of Indian blood. An initial search was conducted of the residence. No other victims or subjects were located. The crime scene was secured, and the Ada Police Department started the investigation.

7. Ada Police Department identified another witness, D.C., on the scene and remined on scene. The reporting party, L.W., was transported to the Ada Police Department for an interview; D.C. remained on scene and was interviewed by the Ada Police Department.

8. During the interview with L.W., L.W. explained that L.W. picked up S.M. that morning and took S.M. back to L.W.'s residence located at 1340 Wolfe Lane, Ada, Oklahoma for a couple of hours.

9. L.W. stated that, S.M. was getting ready to leave the residence when L.W. noticed a black in color pickup ("SUBJECT VEHICLE") parked in front of L.W.'s residence.

Inside the vehicle were D.C. and HARJO. HARJO is an enrolled member of the Chickasaw Nation and has some quantum of Indian blood.

10. L.W. stated HARJO and D.C. came into the residence. L.W. talked to them on the couch. L.W. advised that sometime thereafter, S.M. came around the corner, entered the room, and began to yell at HARJO. S.M. and HARJO then began to fight. L.W. stated D.C. attempted to separate the two, but they began to fight again. L.W. explained that after they were separated a second time, S.M. picked up a power tool and attempted to hit HARJO.

11. L.W. stated he took the power tool away from S.M. When L.W. turned around, L.W. saw HARJO with a pistol, and she stated, "I've got something for her." HARJO then shot S.M. After the shooting, HARJO returned to the SUBJECT VEHICLE and fled the scene.

12. D.C. was interviewed by the Oklahoma Bureau of Investigation on scene, during the interview, D.C. initially stated they were picked up by someone they know as "Lady Savage" and taken to the residence. D.C. identified "Lady Savage" as HARJO by name.

13. D.C. admitted that the SUBJECT VEHICLE was hers and admitted to being with HARJO for approximately two weeks.

14. D.C. stated no one else was at the residence at the time of the incident other than D.C., L.W., S.M., and HARJO. D.C. stated that S.M. and HARJO started arguing in the doorway of the house and then began fighting. D.C. explained that L.W. attempted to get them to stop fighting, and then D.C. heard one shot. D.C. advised that HARJO left the scene in the SUBJECT VEHICLE.

15. During a canvass of the neighborhood, officers located a residence with a Ring Camera System. The homeowner of that residence was able to provide footage of what is believed to be SUBJECT VEHICLE leaving the scene at a high rate of speed.

16. The owner of the residence, L.W., granted consent to search it. Additionally, officers sought and obtained a Chickasaw Nation search warrant for the residence. Inside, a deceased female was located and identified as S.M. The affiant was informed that one spent 9mm shell casing was in the living room, as well as a protective cover for a red dot optic for a firearm.

17. The SUBJECT VEHICLE was located on the same evening by an Ada Police Officer at DG Market, 3002 Arlington Street, Ada, Oklahoma. The officer located the SUBJECT VEHICLE, which matched the description of the vehicle captured on the Ring Camera System. The officer described the vehicle as having hot brakes and a large water spot under the vehicle which led him to believe it was the SUBJECT VEHICLE.

18. Despite searching the area, Ada police were unable to locate HARJO. The SUBJECT VEHICLE was towed to the Ada Police Department and placed inside secured indoor storage.

19. D.C., the owner of SUBJECT VEHICLE, consented to its search. Additionally, officers sought and obtained a Chickasaw Nation search warrant for SUBJECT VEHICLE. During the search, officers located a 9mm pistol with a red dot optic without a cover. Inside the vehicle, the **Subject Property** ("iPhone")—a blue Samsung cellphone, with photo of male and female believed to be Heather HARJO and Clifton Hawk on the lock screen—was recovered. The Subject Property is believed to belong to HARJO because of the lock screen picture of HARJO and the fact that HARJO had recently occupied the SUBJECT VEHICLE. The lock screen picture was identified as HARJO by Officers familiar with HARJO's appearance.

20. Based upon my training and experience, there is probable cause to believe that HARJO was involved in the murder of S.M. Further, there is probable cause to believe that this

phone will contain texts, voice communications, photographs, or other items of evidentiary value that may relate to the underlying crime of Murder in Indian Country.

## DEFINITIONS AND TECHNICAL TERMS

21. Based on my training and experience, and information acquired from other law enforcement officials with technical expertise, I know the terms described below have the following meanings or characteristics:

22. The term "email" (electronic mail) is defined as the text messages sent from one person to another via a computer, which may include images. Email can also be sent automatically to a large number of addresses via a mailing list.

23. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. The information stored in connection with an email account can indicate who has used or controlled the account. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Additionally, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

24. Instant messaging (IM) is a collection of technologies that create the possibility of real-time text-based communication between two or more participants via the Internet

Instant messaging allows for the immediate transmission of communications, including immediate receipt of acknowledgment or reply.

25. "Wireless telephone" (or mobile telephone, or cellular telephone), a type of digital device, is a handheld wireless device used for voice and data communication at least in part through radio signals and also often through "wi-fi" networks. When communicating via radio signals, these telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones, traditional "land line" telephones, computers, and other digital devices. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of applications and capabilities. These include, variously: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages, e-mail, and other forms of messaging; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; utilizing global positioning system ("GPS") locating and tracking technology, and accessing and downloading information from the Internet.

## ITEMS TO BE SEIZED

26. Based on my training and experience and familiarity with investigations into Murder in Indian Country, and my discussions with other trained law enforcement officers, I know the relevant facts that comprise this Affidavit.

27. I also know that a majority of households and businesses in the United States now have access to a personal computing device of one type or another. In light of this fact, I further believe that records associated with illegal conduct are likely to be found on digital

devices, including "smartphones." Thus, I have requested permission to search the **Subject Property** found in the SUBJECT VEHICLE.

28. Information stored in electronic form on the digital device can provide evidence of the charged crime of Murder in Indian Country and identity of associates. For example, numbers stored in the telephone (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone/contact numbers, and logs of outgoing and incoming calls) can provide evidence of who the subject is calling, and thus the identity of potential associates. Cellular telephones, and other communication devices can contain similar information.

29. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

30. Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called

for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time. Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a digital device is not segregable from the digital device. Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment and can require substantial time. Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and

extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a digital device user can conceal text in an image file that cannot be viewed when the image file is opened. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband or instrumentalities of a crime. In addition, decryption of devices and data stored thereon is a constantly evolving field, and law enforcement agencies continuously develop or acquire new methods of decryption, even for devices or data that cannot currently be decrypted.

31. Further, there is probable cause to believe that evidence, fruits and instrumentalities of this crime are currently stored on the items which are described in **Attachment A** of this Affidavit. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

## Electronic Storage and Forensic Analysis

32. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33. As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence.

34. Forensic Analysis could show how the **Subject Property** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Property** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Property** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36. Manner of execution. Because this warrant seeks permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

37. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Property** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

_[signature]_
NICHOLAS MILLER
TFO
FBI/Bureau of Indian Affairs

_[signature]_
SUZANNE MITCHELL
United States Magistrate Judge

JUNE 9, 2025

**ATTACHMENT A**

A Mobile Phone, Blue in color Samsung, with photo of male and female -- believed to be HARJO and her boyfriend -- on the lockscreen (the **Subject Property**). This phone was recovered inside of the SUBJECT VEHICLE that was observed being driven from the crime scene by HARJO immediately after S.M. was shot by HARJO. It is currently being held in evidence at 419 NE 38th Terrace, Oklahoma City, Oklahoma (Oklahoma Bureau of Narcotics and Dangerous Drugs). This is in the federal jurisdiction for the Western District of Oklahoma.





## ATTACHMENT B

1.  All records on the **Subject Property** described in **Attachment A** that relate to violations of 18 U.S.C. §§ 1111, 1151, and 1153, which involve HARJO including:

    a. records relating to communication with others as to the criminal offenses above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    b. records relating to documentation or memorialization of the criminal offenses above, including voice memos, photographs, videos, and other audio and video media, and all ExIF information and metadata attached thereto including device information, geotagging information, and information of the relevant dates to the media;

    c. records relating to the planning and execution of the criminal offenses above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

    d. application data relating to the criminal offenses above; and

    e. any information recording HARJO's or other co-conspirator's schedule or travel from April 1, 2024, to the present;

    f. stored addresses or locations within mapping software that may identify

locations recently visited;

g. Evidence of user attribution showing who used or owned **Subject Property** at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history; and

h. All records and information related to the geolocation of **Subject Property** at a specific point in time.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.